Members of the Court Council, good morning. My name is Stuart Fujioka, and I represent Appellant Ronald Malta. We've raised three main issues in our briefings, and I think the first two, being drug type and role in the offense, are pretty much mooted unless we can find a way around the career criminal guideline, which I think is 4B1.1. In the statutory maximum of life, but the way I think we get around that is with respect to the L methamphetamine, which we're saying he should have been sentenced for, in terms of conversion to marijuana, the quantities which carry a maximum of life under 21 BST 841 B1A all line up to the same place on the drug equivalency table under 2D1.1 of the sentencing guidelines, except for L methamphetamine. For example, at the time of the offense, 100 grams of methamphetamine equaled 1,000 kilograms of marijuana. Whatever quantity of L methamphetamine, if it was L much lower than 1,000 kilos of marijuana, it's down in the range of 841 B1C, which is 0 to 20 years. If his statutory maximum is in fact 20 years, then his career offender level comes down to Then we have... And if you can win on the argument we ought to calculate the result. Yes, yes. Now why should we accept that? What's wrong with the conclusion of the pre-sentencing report in the district court that it should be calculated as female? Well, it wasn't proven as required by the cases which addressed this issue back when the guideline was in effect. At the time of this offense, there was a distinction between L meth and D meth. This is back in 1994-95. The cases addressing that issue, such as Dudden, 65 F 3rd, 1461, requires more than just... Even DEH in testimony was not sufficient to show that a drug was D meth instead of L meth. Neither is the use of the word ice in the indictment or the charging documents because this is a no-dope case. The defendant never saw the drug... to an indictment that used the word ice. Why shouldn't that tell us, okay, ice it is? Well, because then you run into another problem where ice is calculated different from generic methamphetamine and without having recovered any drugs, it wouldn't be appropriate to sentence him under ice. So to say that it was generic methamphetamine instead of L meth should have been proven by the government and the case law is clear from that time period that there is... It's not defendant's burden to prove it was L meth. It's the government's burden to show it was D meth. And it's clear from other circuits that this is a sentencing issue. So the fact that it wasn't addressed at the plea stage or by pretrial motion or anything even before sentencing, I don't think precludes us from... or precludes a finding, the proper finding, that it was L meth. As far as the supervisor manager... Are you talking about the conspiracy count here? Yes. And so it's just a question of the pleading and the indictment, whether he was charged with the D meth, the regular meth, or whether he was. What he pled to, what he intended to sell, what he conspired to sell. What evidence is there indicating that he was conspiring to sell L meth? We're saying there is no real evidence either way what it was as far as quality because it was never discussed on the wiretaps or anything. He was charged with ice by the government when the government knew that no drugs would ever be recovered. So to say that it was D meth because he was charged with ice, we don't think it's sufficient based on the requirements that have been placed on the government in cases such as Dunning, Burt, Magellan, Patrick. Those cases all require proof that it was D meth and the evidence wasn't there in this case. Right, but I think the problem is that you've got at least a plea of guilty to ice, which is not harmless type of meth that has no value. And second, you've got a man paid for the drugs or was going to pay for the drugs that is consistent with the type of meth for which he was sentenced. Well, I don't know that the price is consistent with ice, but the fact that he's charged with ice, no drugs would ever be recovered, and he acquiesced to the word in his plea, I don't think that should get him up to 80% pure, which the guidelines construes as ice. So I don't think you prove that it's D meth just by charging ice and having the guy plead to when there's nothing discussed about quality when they're actually negotiating the transactions. And as far as this particular defendant or appellant goes, there was no actual contact with the seller. These were all people who had contact with the sources on Idlewood, California. So then again, we need to, I think, circumvent or get his career offender down for it to make a difference. If we can, as long as we can do that, we think there is a very compelling argument for L meth. We'd better get on to the other issues. We're getting to run out of time. The role in the offense, what we have been emphasizing is the fact that the other conspirators seem to realize that the appellant's wife was the main person and not my client who was sitting in prison. He had access to money, but his brother did what Mr. Malta told him to. But other than that, it was pretty much others making the decisions. As you can tell by the way the drug amount kept changing during the discussions. The last thing we raised was credit for time served. Subsequent to briefing, I've had a chance to rethink this issue. I believe the main problem for the appellant is 18 U.S.C. 3585, which precludes credit if it towards a sentence if it's credited to another sentence. Indeed, he was in State custody, or he was serving his State sentence until 1997. But it's quite clear from the Court's rulings that it did want to make some adjustment for the extraordinarily long time between charge and sentencing, or even charge and plea. So the Court did try to have him credited with some of that time, and the Bureau of Prisons was not recognizing that. So we think, as we had suggested but was not followed by the Court, the appropriate thing to do would have been a downward departure, which is permissible under the case law we've cited. So we feel that at least that part of it should be remanded back for consideration of downward departure. Do we have the authority to do that? Yes, I do. Can we review the decision not to downwardly depart? The Court can, especially when the sentencing court's intent was clear that it wanted to make some kind of adjustment for the extraordinarily long time that Mr. Longton was presentenced. Thank you, counsel. Thank you. Thank you. Good morning. May it please the Court, Jonathan Marcus on behalf of the United States. On the first two issues of whether it was ICE and also the role in the offense, those issues, first of all, are indeed moot. He was a career offender, and so his level was 37. And defendants' argument that you should go through sort of the guidelines, methodology, and convert the methamphetamine into marijuana and then come back to the statute, which doesn't make any distinction between the different chemical forms of methamphetamine, Talmet, or Demet, that argument is a bootstrapping argument that's meritless. The statute back in 1994, 1995, made no distinction between the chemical forms. And for 100 grams or more of methamphetamine of any form, the sentence, the maximum sentence is life. So those issues are, in fact, moot. But even if this Court were to reach them, the defendant here did, at his plea hearing, under oath admit, he first said he understood the charges, that the conspiracy involved, a conspiracy to possess with intent to distribute more than 100 grams of crystal methamphetamine, which is otherwise known as ICE. And he pleaded guilty to those charges and that the admission, the factual admission of guilt takes that factual issue out of the case. And while it's reached separately at sentencing, the Court was certainly reasonable in relying upon those factual admissions. If the Court can't rely on admissions by the defendant under oath, I'm not sure what the Court can rely on reasonably. And on top of the defendant's admissions, you have the admissions of his co-defendants in their plea agreements, both of whom admitted that the conspiracy was to possess with intent to distribute ICE. And you also have references in the wiretaps as well to essentially code words for that, such as glass and whether it was going to be wet or dry. And you have the value the defendant is willing to pay for the second part of the conspiracy, $20,000 for two grams. I'm sorry, for two pounds, for two pounds of ICE. So there's an abundance of evidence in the record, beginning with the defendant's own admissions, that the Court could rely on in concluding that it was, in fact, ICE that was involved in this conspiracy. Moving on to the issue of also quickly on the role of the offense, the Court also was reasonable in concluding there's no clear error. In the district court's conclusion, the defendant's supervisor managed James Malta and Brenda Malta. They both admitted in their plea agreements that they were directed by the defendant. And there's also, we point out references in our brief on page 28, to reference that those are recorded conversations, where the defendant and his co-conspirators, Francis Kalani Lee and Naki, make clear the defendant did control Brenda Malta and he was instructing her. So there's plenty of evidence in the record to support that as well, if the Court needs to reach that issue. Finally, on the issue of the time he was in custody, from December 1995 through October 1997, this about 22-month period of time which was credited against his state sentence. The bottom line is the district court basically did all it wanted to do for this defendant, and the defendant's not entitled as a matter of law to credit for this time period. The district court noted, first of all, the district court explicitly said on the record on page 94, that I've considered your motion for downward departure on all grounds. I recognize that I have authority to depart on all of these grounds, but I'm not going to do it. But I will, nevertheless, I will take into account the extraordinary amount of time you spent in the state facilities before this sentencing in considering the government's motion for downward departure. And as a result, the district court went two levels further than the government had requested on the downward departure for his cooperation, and explicitly noted on pages 96 and 116 of the supplemental excerpt of record, that it was taking into account this issue of the defendant spending a lot of time in state custody, or sort of combined state and federal custody, because he was appearing in federal court pursuant to a writ ad prosequendum. So the court took it into account, and then the defendant kept pressing for more, and it came back, and the district court said, look, in the order denying his motion to amend the judgment, the court said, look, I've already taken this into account. I denied your motion for downward departure. I have no authority under Rule 35 or 28 U.S.C. 2255 to do anything more. I've made a recommendation to the Bureau of Prisons that you get credit, additional credit for this time, but there's nothing more I can do. And so there's nothing this court can do. This court can't force the district court to grant a downward departure that it was unwilling to give. Well, I think that the argument being made by the defendant is that the district court's recommendation, subsequently, that he should receive the time served, was a premise or was a factor in his calculation of the sentence originally, so that if the district court had understood that he wasn't going to get credit for that extended period of time served, he might have calculated the sentence differently. Well, whether that's the case, at that point, there was nothing the district court could do. Under Rule 35, the court acknowledged that there was no clear error, no arithmetical or technical or clear error that would give it authority at that point to change the sentence. And the court also noted in its order denying the motion to amend that, in fact, the defendant was still serving this time, sort of as this kind of same acknowledgment made during the sentencing hearing that it sort of understood that there wasn't, you know, if the defendant was certainly not clearly entitled to this, then the court would leave it to the BOP to ultimately make that decision. Would you mind addressing the question of the concurrent versus consecutive sentences? Do you see that as a – it's presented differently from the credit for time served, so it appears to be a distinct issue. Would you agree with that? Yes. I mean, under the law, there's a distinction. The courts draw a distinction between sort of effectively giving credit by running a sentence concurrently and this credit for time served that is sort of up to the BOP to decide. Well, except on the concurrent – with respect to the imposition of concurrent and consecutive sentences, that is a matter that's within the jurisdiction, discretion of the district courts rather than BOP. Yes, absolutely. Absolutely, yeah. And normally, if we were talking about pure federal sentences, if the district court had decided to impose a consecutive sentence, that's construed to be an upper departure for which notice must be given prior to sentencing. What's your view of that law as it's applied to a state sentence? Well, first of all, I mean, my understanding here is the consecutive sentence in this case is basically called for by the sentencing guidelines, 5G1.3a, which calls for a consecutive sentence when the defendant commits the offense for which he's being sentenced at a time he's already serving another sentence, that there's an undischarged term that he's serving, in this case the state sentence. The sentencing guidelines call for a consecutive sentence in that circumstance, although there's a background commentary at the end of 5G1.3 that basically says, well, there's still – the statute provides that there's discretion. So while there's a consecutive sentence called for in the circumstance, the court can, in taking into account all the circumstances, choose to depart. So there is still some discretion left over, even though in the vast majority of cases you're going to get a consecutive sentence when the defendant's committing the offense while an unrelated offense, for that unrelated offense at the time that he's serving a sentence for something else. And also the case law is also clear that there's no obligation – the district court has no obligation to tell the defendant that he faces a consecutive sentence. No, I think that's incorrect, though. I mean, we have a case, United States v. Williams, where we held that it was error not to apprise the defendant of the intent to impose a consecutive sentence. The sentence is run consecutively because it's effectively an upward departure for which they didn't have notice. Well, I don't think in this circumstance, Your Honor, it is effectively an upward departure. It's not – I mean, it's an unrelated offense that's committed at the time he's serving a state sentence. I don't think there's any reason a defendant would believe they would run concurrently. And, again, if you look at the Wills decision, which is right on point factually, it's a case where the defendant pled guilty to an unrelated federal offense while he was serving his state time. And the court said the district court has no obligation to – I'm not saying it's an – oh, go ahead. The court has no obligation to warn the defendant of the possibility of consecutive sentences. The court in the Kikuyama decision and the Lail decision basically reaffirmed Wills, and those cases are also on point for that proposition. Well, let me say to you that it's a state sentence. But if it's a federal sentence, there has to be some notice. I mean, what bothers me about this case in part is – and the defendant really has raised this. But if I'm looking through the pre-sentence report and through the transcript of the sentencing, there's really no indication given to the defendant that this is what's going to occur. The word concurrent is used throughout. And apparently, at least if you read the briefs in this proceeding, he appears to be surprised that the state sentence would not run consecutively. Now, as a matter of common sense, I would think a state sentence and a federal sentence would be reasonably apparent that the normal rule would be to run consecutively and not concurrently. But on the other hand, I don't see anything here that gave the defendant particular notice. Now, Wills may say that. Right. Again, Wills is right on point, and Kikuyama and Lail also make the same point. The court didn't have a response. There's no due process violation in not giving such a warning. Right. But would you agree with me factually here that there is no notice to this defendant of what he's going to expect in terms of concurrent versus consecutive sentences? I don't know if that was specifically discussed. I do know that he was warned that he faced maximum life in prison. His lawyer at the plea told him and told the court and the defendant that he was likely to face well more than 10 years. He ended up getting 138 months when his original sentencing range was 262 to 327 months. So in our view, he got a pretty good deal in the end, and he knew he faced a lot of time, and he got less time than he expected. Thank you. Thank you, counsel. This case is submitted. The next case on the calendar is United States v. Hayes. Thank you.
judges: Reinhardt, Thomas, Clifton